### STATE OF FLORIDA v. ENGLEHARDT
Case No. 82-104403-TT AO2
County Court, Palm Beach County
March 4, 1983

B. King, Asst. State Attorney, for plaintiff.

Robert Foley, for defendant, Englehardt.

William Staab, for defendant, Horste.

JAMES T. CARLISLE, County Judge

The issue in both of these cases is the authority of municipal police officers to conduct investigations and take persons into custody outside their jurisdiction.

Section 901.25(2) F.S. provides:

"Any duly authorized state, county or municipal arresting officer is authorized to arrest a person outside his jurisdiction when in fresh pursuit."

Sub-section (1) thereof provides:

"The term 'fresh pursuit' as used in this act shall include fresh pursuit as defined by the common law *and also* . . . the pursuit of a person who has violated a city ordinance or committed a misdemeanor." (Emphasis supplied.)

The high speed chase is de rigueur in all police movies since the French Connection. I doubt, even at common law, fresh pursuit required a chase like gangbusters. The same term is used in Section 941.35 F.S. relating to extradition. There it does not necessary imply instant pursuit, but pursuit without unreasonable delay, 14 Fla. Jr. 2d, Criminal Law, Section 482, p.718.

Whatever the case at common law, I construe Section 901.25 F.S., as amended in 1978, as having added something to the common law definition. It now includes, as well as the common law definition, "*and also* . . . the pursuit of a person who has violated a city ordinance or committed a misdemeanor." I believe fresh pursuit, as used in Section 901.25 now means pursuit without unreasonable delay in the same manner as used in Section 941.35 F.A.

In Englehardt, Officer Callahan of the Royal Palm Beach Police Department, received a call concerning an accident that occurred within the city limits. Upon arrival at the scene, he discovered evidence indicating a vehicle had left the road, struck a tree and returned to the road. The

vehicle left a trail of transmission fluid. Officer Callahan and Officer Forest began to follow the trail of transmission fluid. Subsequently, they were advised that a vehicle had been located outside the city limits.

Deputy Sheriff Olivia found the vehicle, damaged, with Englehardt behind the wheel. He advised the Officers from the Royal Palm Beach Police Department, who arrived on the scene and found the bark of the tree lodged in the damaged portion of Mr. Englehardt's vehicle. Mr. Englehardt was requested to perform roadside field sobriety tests. He was then arrested for driving while impaired (DWI) and leaving the scene of the accident. At the Royal Palm Beach Police Department, Mr. Englehardt refused to submit to a breathalyzer test.

In Horste, Officer Parks of the North Palm Beach Police Department testified he discovered an automobile in six feet of water near the Burnt Bridge during the early morning hours. He dove into the water and found the vehicle unoccupied. He began an investigation and broadcast a BOLO, to be on the lookout for anyone who could have been involved in that accident.

The area of the Burnt Bridge is located within the City of North Palm Beach. It is a winding road through a series of mangrove islands. It is virtually deserted during the early morning hours. An unnamed officer of the City of Riviera Beach picked Mr. Horste up as he was walking towards the populated area within the City of Riviera Beach. Mr. Horste was all wet. The officer originally intended to take Mr. Horste to the home of a friend when he heard the BOLO. Upon making contact with Officer Parks he was asked to return Mr. Horste to the North Palm Beach Police Department. When Officer Parks saw Mr. Horste he requested he submit to a breathalyzer test.

Mr. Horste seeks to suppress the results of the breathalyzer test. Mr. Englehardt seeks to suppress the results of the field sobriety test and his refusal to take a breathalyzer test.

A municipal officer may conduct a lawful investigation outside his territorial jurisdiction, but the subject matter of the investigation must have originated in his own jurisdiction. *State v. Schuyler*, (3DCA 1980) 390 So.2d 458 at 460. *State v. Cahill*, (2DCA 1980) 388 So.2d 354 at 356. *State v. Parker*, (1DCA 1978) 362 So.2d 1033. *State v. Chapman*, (3DCA 1979) 376 So.2d 262.

In *State v. Williams*, (2DCA 1979) 366 So.2d 135, Officer Nelson of the Gulf Port Police Department responded to a robbery complaint at the Cheshire Cat Night Club. He obtained a description and license plate number of the vehicle used in the crime. He learned the vehicle was registered to Williams and that Williams lived only a few blocks

away in St. Petersburg. Officer Nelson drove to Williams' address where he saw, parked on a street, a vehicle which matched the description and which a witness identified as being the car used in the robbery. Officer Daley of the St. Petersburg Police Department arrived on the scene. At this point Williams exited his residence and began to depart in the car. Officer Daley stopped the car. Soon thereafter another Gulf Port police unit arrived with still another witness who identified Williams as the man who had driven the car after the robbery. Officer Nelson, of the Gulf Port Police Department, arrested Williams within the City of St. Petersburg. He also seized the vehicle and had it transported to the Gulf Port police impound lot. It was inventoried and found to contain contraband.

Williams moved to suppress the evidence, contending as in the instant cases, the arrest and seizure was made while Officer Nelson was outside his jurisdiction. The trial court granted the motion to suppress.

The Second District Court of Appeal reversed. In doing so the Court found Officer Nelson was not in "hot pursuit" and, therefore, he had no authority to act as a police officer. The Court then noted, under *State v. Crum*, (3DCA 1975) 323 So.2d 673, a private citizen has authority to seize evidence of a crime. The Court goes on to reason that although Officer Nelson was acting under color of his office "it would be a non-sequitur to say that Nelson had less authority than other citizens to seize evidence of a felony situated in open view merely because he was dressed in the uniform of a neighboring police department . . ."

The Williams' case took place prior to the effective date of Section 901.25 F.S. as amended in 1978. At that time, fresh pursuit did not "*also include* the pursuit of a person who has violated a city ordinance or committed a misdemeanor," in addition to the common law definition of fresh pursuit. From a result standpoint, I suggest the Second District would have reached the same result in a much more straightforward manner if the applicable law had been as now contained in Section 901.25 F.S.

The *Williams*, supra, case is remarkably similar to the two cases before me. All three involve officers investigating incidents that occurred within their municipality. All three involve the taking into custody of a person outside that jurisdiction. All three involve the assistance of an officer of the neighboring jurisdiction. In none of the three is there a chase. In all three something of evidentiary value was obtained after the defendants or the vehicle were returned to the jurisdiction where the incident took place, i.e. the contraband was found in Mr. Williams' car,

Mr. Englehardt refused to take the breathalyzer, Mr. Horste took the breathalyzer.

In the case of Mr. Englehardt, Deputy Sheriff Olivia observed him in the actual physical control of a vehicle while his faculties were impaired. It would be a non-sequitur to hold an arrest by a Deputy Sheriff to be lawful and an arrest by Officer Callahan unlawful. The admissibility of evidence stemming from the arrest should not depend on which officer made the arrest. Mr. Englehardt is not prejudiced either way. The State is prejudiced if courts consider it to make a difference which officer makes the arrest. A fortuitous circumstance would be fortuitous indeed for Mr. Englehardt and cause an absurd result.

A construction of Section 901.25(1) F.S. which would permit a municipal officer to conduct an investigation outside his territorial jurisdiction of a matter which originated within his municipality; which would permit seizure of evidence situated in open view, *Williams,* supra, but which would deny them the authority to take persons whom they have probable cause to believe to have committed criminal acts within the municipality into custody, leads to an absurd result. That construction ignores the language following "and also" and "shall also include" contained in the definition section.

Certainly the Legislature intended to authorize arrests and seizures where the officers are investigating an event that just occurred and that investigation produces sufficient probable cause to justify the arrest of a person who happens to be outside the jurisdiction. Section 901.25 F.S. was amended by the 1978 Legislature to include just such situations as presented by the cases at Bar. The motions to suppress are hereby denied.

DONE AND ORDERED this 4 day of March, 1983, in Chambers, at West Palm Beach, Palm Beach County, Florida.